**Clifford C. HAYWOOD, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–10026.

Court of Appeals of Alaska.

Oct. 16, 2008.

Stephanie Patel, Law Office of Dan Allan, Anchorage, for the Appellant.

Joseph W. Kovac, Assistant District Attorney, Adrienne P. Bachman, District Attorney, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

Clifford C. Haywood was convicted under AS 28.35.030 of driving while under the influence. At sentencing, the district court—pursuant to former AS 28.33.140—disqualified him from driving a commercial motor vehicle for a year. Haywood appeals the disqualification. He contends that former AS 28.33.140 did not authorize the district court to disqualify him from driving a commercial vehicle. For the reasons explained here, we agree with Haywood.

*Facts and proceedings*

On May 22, 2005, an Anchorage police officer stopped a Pontiac Grand Prix that was exceeding the speed limit. The officer contacted the driver, Haywood, and saw indications that he was intoxicated. Haywood admitted that he had been drinking. He failed a series of field sobriety tests, and the results of a DataMaster test showed an alcohol content of .110 percent.

Haywood held a commercial driver's license. Before trial, Haywood raised the issue of whether former AS 28.33.140 authorized courts to revoke a commercial driver's license when the conviction under AS 28.35.030—driving while under the influence—did not involve a commercial vehicle. Haywood argued that the legislature did not intend to require revocation of a commercial driver's license for a conviction under AS 28.35.030 unless the motorist was operating a commercial vehicle at the time of the offense. District Court Judge Gregory Motyka rejected Haywood's argument. He ruled that the provisions of former AS 28.33.140(a) included DUI offenses committed while operating a non-commercial vehicle.

Haywood later entered a plea and was convicted of violating AS 28.35.030. At sentencing, based on former AS 28.33.140(a), Judge Motyka disqualified Haywood from driving a commercial motor vehicle for a year. Haywood appeals.

*Why we find that former AS 28.33.140 did not allow disqualification of a commercial driver's license for convictions involving a non-commercial motor vehicle*

Alaska Statute 28.33.140(a) sets out the requirements for disqualifying persons from driving commercial motor vehicles.[1] Of these, subsection (a)(1) requires disqualification for a conviction under AS 28.33.030: driving a commercial motor vehicle while under the influence or with a blood alcohol content of .04 percent or higher. Subsection (a)(3) requires disqualification for a conviction under AS 28.35.030: driving any motor vehicle while under the influence or with a blood alcohol content of .08 percent or higher. Although these two provisions appear clear, at the time of Haywood's offense their meaning was cast into doubt by another subsection, former AS 28.33.140(b). This subsection provided:

> A finding by a court that there is proof by a preponderance of the evidence that a person was operating a commercial motor vehicle at the time that the commercial motor vehicle was involved in an offense listed in (a)(2)—(6) of this section is sufficient to disqualify the person under this section.

(This subsection was repealed effective July 1, 2007.[2])

Judge Motyka found that the plain language of subsections (a)(1) and (a)(3) unambiguously showed that the legislature intended to disqualify the commercial driver's license of any person who was convicted under AS 28.35.030, even if the offense did not involve a commercial motor vehicle. After comparing the language in subsection (a)(1), which addresses "operating a commercial motor vehicle," with (a)(3), which addresses "operating a motor vehicle," Judge Motyka concluded that "[i]t is difficult to imagine a clearer expression of legislative intent to include conviction of operating [any] motor vehicle while under the influence as grounds for mandatory revocation of a commercial driver's license."

In reaching this conclusion, Judge Motyka found that subsection (b) did not modify subsection (a). Instead, he found that the legislative history of the statute indicated that subsection (b) was intended to clarify that the evidentiary burden for administrative hearings involving commercial driver's licenses was the "preponderance of the evidence"

On appeal, Haywood renews his claim that former AS 28.33.140 did not authorize the district court to disqualify him from driving a commercial motor vehicle. This claim presents a question of statutory construction. "The guiding principle of statutory construction is to ascertain and implement the intent of the legislature or agency that promulgated the statute or regulation."[3] Alaska courts apply "a sliding scale approach [to statutory interpretation] best summed up as, 'the plainer the meaning of the language of the statute, the more convincing any contrary legislative history must be.'"[4]

*Legislative history of former AS 28.33.140*

Former AS 28.33.140 was enacted in 1992 as part of Senate Bill 261.[5] The main purpose of Senate Bill 261 was to bring Alaska into compliance with federal law regulating commercial motor vehicles.[6] The legislature wanted Alaska law to conform with federal regulations for two reasons: to obtain federal highway funds, and to ensure that Alaska residents could operate commercial vehicles outside of Alaska.[7]

---

1. AS 28.33.140 was significantly amended in 2007. *See* SLA 2007, ch. 23, §§ 16–23, 31 (effective July 1, 2007). Haywood was sentenced under the 2004 version of the statute.

2. SLA 2007, ch. 23, §§ 31, 34.

3. *Millman v. State*, 841 P.2d 190, 194 (Alaska App.1992).

4. *Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 516 (Alaska 1998) (quoting *Peninsula Mktg. Ass'n v. State*, 817 P.2d 917, 922 (Alaska 1991)).

5. SLA 1992, ch. 3, § 19.

6. *See* April 22, 1991, Governor's Transmittal Letter for Senate Bill 261, 1991 Senate Journal 954–55.

7. *See* Committee Minutes, Senate State Affairs Committee (April 26, 1991) (testimony of Juanita Hensley, Division of Motor Vehicles, Department of Public Safety, on Senate Bill 261). *See also* April 22, 1991, Governor's Transmittal Letter for Senate Bill 261, 1991 Senate Journal 954–55.

In 1992, federal regulations required that a person convicted of a listed offense be disqualified from driving a commercial motor vehicle "if the offense was committed while operating a commercial motor vehicle."[8] The first of these listed offenses was "[d]riving a commercial motor vehicle while under the influence of alcohol."[9] This offense was defined as: (1) "Driving a commercial motor vehicle while the person's alcohol concentration is 0.04 percent or more"; (2) "Driving under the influence of alcohol, as prescribed under State law"; or (3) "Refusal to undergo such testing as is required by any State ... in the enforcement [of (1) or (2)]."[10] The federal government did not require disqualification of a commercial driver's license for a DUI offense committed in a non-commercial motor vehicle until 1999.[11]

Federal regulations also required disqualification for driving a commercial vehicle while under the influence of a controlled substance, for leaving the scene of an accident involving a commercial motor vehicle, for committing a felony involving the use of a commercial vehicle, for using a commercial vehicle in the commission of a list of criminal drug offenses, and for committing a serious traffic offense while operating a commercial vehicle.[12] Thus, under the federal regulations in effect when Senate Bill 261 was pending, every one of the listed disqualifying offenses involved the use of a commercial motor vehicle.

To conform state law with these federal regulations, Senate Bill 261 created AS 28.33.140. When signed into law, AS 28.33.140(a) listed six offenses that required disqualification of a commercial driver's license. These offenses were essentially the same as the six offenses listed in the 1992 Code of Federal Regulations.

When Senate Bill 261 was considered by the Senate State Affairs Committee, a Department of Law representative, Assistant Attorney General Dean Guaneli, testified on two occasions that the bill's provisions matched the federal regulations except in one respect: The bill created a new state offense of operating a commercial vehicle when under the influence of intoxicating liquor or with a blood alcohol level of .04 percent or higher.[13]

As originally enacted, AS 28.33.140(a) made six offenses "grounds for immediate disqualification from driving a commercial motor vehicle": (1) operating a commercial motor vehicle while intoxicated in violation of AS 28.33.030; (2) refusal to submit to a chemical test in violation of AS 28.35.032; (3) operating a motor vehicle while intoxicated in violation of AS 28.35.030; (4) leaving the scene of an accident in violation of AS 28.35.060, or failing to file, or providing false information in, an accident report in violation of AS 28.35.110; (5) a felony under state or federal law, which was facilitated because the person used a commercial motor vehicle; or (6) a serious traffic violation. Of these, only (1) and (5) specifically included a commercial motor vehicle as part of the offense.[14]

Haywood contends that the legislature included AS 28.33.140(b) in Senate Bill 261 to limit the disqualifying offenses in subsection (a). In Haywood's view, subsection (b) was added to ensure that the statute "would mirror the requirements of the federal regulation" by requiring "disqualification ... [only] for certain offenses involving operation of a [commercial] motor vehicle." In other words, Haywood argues that the legislature included subsection (b) to ensure that none of the listed offenses would require disqualification of a commercial driver's license unless the court finds by a preponderance of the

---

**8.** 49 C.F.R. § 383.51(b)(1) (1992).

**9.** 49 C.F.R. § 383.51(b)(2)(i) (1992).

**10.** 49 C.F.R. § 383.51(b)(2)(i)(A)-(C) (1992).

**11.** Commercial Motor Vehicle and Driver Safety, Pub.L. No. 106–159, § 201, 113 Stat. 1758–59 (1999).

**12.** 49 C.F.R. § 383.51(b)(2)(ii)-(v) and § 383.51(c) (1992).

**13.** See Committee Minutes, Senate State Affairs Committee (April 16, 1991 and May 10, 1991) (testimony of Assistant Attorney General Dean Guaneli, Criminal Division, Department of Law, on Senate Bill 261); SLA 1992, ch. 3, § 15.

**14.** SLA 1992, ch. 3, § 19.

evidence that the defendant was operating a commercial vehicle at the time of the offense.

When Senate Bill 261 was being considered, there were no committee discussions about the purpose of AS 28.33.140(b) and its relationship to subsection (a); nor did legislators discuss this issue in 2007 when they repealed subsection (b). But as already explained, there was uncontradicted testimony that Senate Bill 261 differed from the federal regulations then in effect in only one significant way—it added the offense of driving a commercial motor vehicle while under the influence.

Considering this legislative history—particularly the uncontradicted testimony that Senate Bill 261 matched the federal regulations, with the sole exception of adding a new criminal offense—we find that Haywood's interpretation is not unreasonable. That is, it is possible that when passing Senate Bill 261 the legislature intended AS 28.33.140(a)-(b) to mirror the federal regulations by requiring disqualification of a commercial driver's license only when a commercial motor vehicle was involved in the criminal offense.

As noted earlier, Judge Motyka found instead that subsection (b) was intended to establish the standard of proof in administrative hearings. But the discussion in the committee minutes that Judge Motyka relied on to support this interpretation did not address subsection (b); rather, that discussion concerned the section of Senate Bill 261 that amended AS 28.15.166(g) and (j).[15] Those subsections address administrative license-revocation hearings and the standard of proof for those hearings.[16]

The State offers an alternative explanation: That subsection (b) was added to allow prosecutors to seek disqualification of a commercial driver's license in cases in which the State has failed to prove the underlying offense beyond a reasonable doubt.[17] It is also possible that subsection (b) was meant to allow courts in certain civil law suits to disqualify a person's commercial driver's license as part of a civil remedy.

Given the language of AS 28.33.140(a)(1) and (a)(3), and the lack of any legislative history explaining the purpose of subsection (b), none of these interpretations of the legislature's intent when it passed Senate Bill 261 is patently unreasonable. Because these subsections are susceptible to more than one conflicting but reasonable interpretation, they are ambiguous.[18]

"If a statute establishing a penalty is susceptible of more than one meaning, it should be construed so as to provide the most lenient penalty." [19] Likewise, "[w]here legislative intent is ambiguous, the rule of lenity must prevail." [20] Under the rule of lenity, courts resolve the ambiguity by adopting the meaning most favorable to the defendant.

Applying this rule in Haywood's case, the most lenient construction is that under former AS 28.33.140(a) and (b), a conviction under AS 28.35.030 would not result in disqualification of a commercial driver's license unless a commercial motor vehicle was involved. This construction does not lead "to patently absurd results or to defeat of the obvious legislative purpose behind the statute." [21]

Accordingly, we conclude that the district court did not have the authority to disqualify

**15.** *See* Letter dated May 13, 1991, from Assistant District Attorney General Dean Guaneli to Senator Pat Rodey, Senate State Affairs Committee.

**16.** SLA 1992, ch. 3, §§ 4 and 5.

**17.** We acknowledge that both Haywood's and the State's interpretation of subsection (b) appear to allow disqualification of a defendant's commercial driver's license in violation of the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). That is, both interpretations would allow the court to increase punishment during the penalty phase using a "preponder-

ance" standard of proof rather than the "beyond a reasonable doubt" standard of proof required by *Blakely*.

**18.** *See State v. Andrews*, 707 P.2d 900, 908 (Alaska App.1985).

**19.** *State v. Stafford*, 129 P.3d 927, 933 (Alaska App.2006).

**20.** *George v. State*, 988 P.2d 1116, 1117 (Alaska App.1999).

**21.** *See McDole v. State*, 121 P.3d 166, 169 (Alaska App.2005).

Haywood from driving a commercial motor vehicle.

*Conclusion*

The portion of the district court judgment disqualifying Haywood from driving a commercial motor vehicle is VACATED. The remainder of the judgment is AFFIRMED.

MANNHEIMER, Judge, concurring.

I write separately to clarify our analysis of the statute at issue in this case, the pre–2007 version of AS 28.33.140.

Under subsection (a) of that statute, if the holder of a commercial driver's license was convicted of one of eight types of traffic offenses, the sentencing court was obliged to impose an "immediate disqualification from driving a commercial motor vehicle".

Of the eight types of traffic offenses listed in subsection (a), the first, fifth, seventh, and eighth types—*i.e.*, those listed in subsections (a)(1), (a)(5), (a)(7), and (a)(8) of statute—expressly referred to offenses involving the operation of commercial vehicles. The remaining four types—those listed in subsections (a)(2) through (a)(6), with the exception of (a)(5)—did not expressly refer to the operation of commercial vehicles.

Haywood's case involves the relationship between the offenses described in subsections (a)(1) and (a)(3) of the statute:

(1) operating a commercial motor vehicle while under the influence of an alcoholic beverage ... in violation of AS 28.33.030 [*i.e.*, the special DUI provision that covers commercial drivers; this special statute contains a lower threshold blood alcohol level—.04 percent]; [or]

. . .

(3) operating a motor vehicle while under the influence of an alcoholic beverage ... in violation of AS 28.35.030 [*i.e.*, the normal DUI provision that covers all drivers]

Haywood argues that even though subsection (a)(3) did not expressly refer to operating "a commercial vehicle" while under the influence, that requirement or limitation is implicit. In other words, Haywood argues

that former AS 28.33.140 did not authorize a sentencing court to disqualify a defendant from operating commercial vehicles unless the defendant's violation of subsection (a)(3) involved an act of driving a commercial vehicle while under the influence.

At first glance, Haywood's restrictive interpretation of subsection (a)(3) appears implausible, because the statute contains a separate provision—subsection (a)(1)—that explicitly deals with DUI offenses that involve commercial vehicles. There would seem to be no reason for the legislature to include subsection (a)(3) in the statute unless the legislature intended subsection (a)(3) to apply to situations not already covered by subsection (a)(1)—in other words, situations where the defendant's DUI offense did *not* involve a commercial vehicle.

But the meaning of former AS 28.33.140(a) is clouded by the wording of the very next portion of the statute, subsection (b):

A finding by a court that there is proof by a preponderance of the evidence that a person was operating a commercial motor vehicle at the time that the [person] was involved in an offense listed in [subsections] (a)(2)—(a)(6) ... is sufficient to disqualify the person [from operating commercial vehicles] under this [statute].

Subsection (b) supports Haywood's interpretation of the statute—because subsection (b) appears to be premised on the concept that a violation of one of the types of traffic offenses listed in subsections (a)(2) through (a)(6) is not enough, by itself, to trigger the driver's disqualification from future operation of commercial vehicles. Rather, subsection (b) appears to say that the driver's disqualification hinges on proof of an additional element: that the defendant was operating a commercial vehicle at the time of the offense.

On appeal, the State suggests an alternative explanation for the legislature's enactment of subsection (b). The State argues that subsection (b) was intended to codify an alternative, lower standard of proof for cases where the defendant's DUI offense involved the operation of a commercial vehicle. According to the State's brief,

[t]he preponderance of the evidence standard [specified in subsection (b) ] is to be used [by the sentencing court] when a *commercial vehicle* is involved in an offense listed in [subsections] (a)(2)—(a)(6); [in contrast,] the beyond a reasonable doubt standard is used when a *non-commercial vehicle* is involved in an offense listed in [subsections] (a)(2)—(a)(6).

(Emphasis added)

The problem with the State's proposed interpretation of subsection (b) is that it would render the statute unconstitutional.

The suspension or lifetime revocation of a commercial driver's license pursuant to AS 28.33.140(c) and (d) is a criminal punishment. Both subsection (c) and subsection (d) begin with the phrase, "A court convicting a person of an offense ... shall". In other words, the license suspension or revocation is imposed by the sentencing court as a consequence of the criminal conviction.[1]

Under Alaska law, when a defendant faces the loss of a valuable license—such as a commercial driver's license—as punishment for committing an offense, this potential punishment triggers the defendant's right to the basic procedural protections guaranteed to criminal defendants under the Alaska Constitution.[2] One of those basic procedural protections is the requirement that the State prove its case beyond a reasonable doubt; another is the right to trial by jury.

Under the State's interpretation of subsection (b), a court would be allowed—indeed, would be required—to revoke a defendant's commercial driver's license if the court, acting without a jury, found by a preponderance of the evidence that the defendant had committed DUI while operating a commercial vehicle. So interpreted, the statute clearly violates the Alaska Constitution. It also violates the Sixth Amendment right to jury trial as interpreted in *Blakely v. Washington*,[3] because the defendant's maximum penalty

for the DUI would be increased based on a finding of fact (1) made by a judge (2) using a standard of proof less demanding than "beyond a reasonable doubt".

For this reason, I reject the State's proposed interpretation of subsection (b). Instead, I conclude that subsection (b) indeed means what it says: when a defendant is convicted of the offense specified in subsection (a)(3)—*i.e.*, driving under the influence as defined in AS 28.35.030—this conviction will mandate the suspension of the defendant's commercial driver's license only if the State proves the additional element that the vehicle involved in the offense was a commercial vehicle.

It is true that this interpretation seems to be at odds with the fact that subsection (a) of AS 28.33.140 contains one provision (subsection (a)(1)) for commercial vehicle DUI as defined in AS 28.33.030, and another separate provision (subsection (a)(3)) for regular DUI as defined in AS 28.35.030. But the legislative history of this statute—a history detailed in Judge Stewart's lead opinion—suggests that this problem stems from a drafting error in subsection (a)(1).

As explained in the lead opinion, the Alaska legislature intended to enact a statute that would parallel the 1992 version of 49 C.F.R. § 383.51, the federal regulation dealing with this same matter. Under that federal regulation, a person lost their commercial driver's license if (1) they operated a commercial vehicle while their blood alcohol level was .04 percent or greater, or (2) they operated a commercial vehicle while under the influence of alcohol as defined by applicable state law (regardless of their blood alcohol level).

But when the Alaska Legislature drafted subsection (a)(1) of former AS 28.33.140, they departed from the wording of the corresponding federal regulation. Instead of

---

**1.** See *Wik v. Department of Public Safety*, 786 P.2d 384 (Alaska 1990), and *Carter v. State*, 625 P.2d 313 (Alaska 1981), both of which construed the companion statute, AS 28.15.181, as a penal statute.

**2.** *See Alexander v. Anchorage*, 490 P.2d 910, 912–13 (Alaska 1971) (right to counsel at public ex-

pense); *Baker v. Fairbanks*, 471 P.2d 386, 401–02 (Alaska 1970) (right to trial by jury); *State v. Auliye*, 57 P.3d 711, 714 (Alaska App.2002) (same).

**3.** 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

wording subsection (a)(1) as "driving a commercial motor vehicle while the person's blood alcohol concentration is .04 percent or greater", the legislature worded subsection (a)(1) as "operating a commercial motor vehicle while under the influence of an alcoholic beverage ... in violation of AS 28.33.030".

To the Alaska drafters, these two wordings may have seemed equivalent at first glance—because AS 28.33.030 contains a provision that forbids a person from operating a commercial vehicle when their blood alcohol level is .04 percent or greater.

But AS 28.33.030 contains a second clause that forbids a person from operating a commercial vehicle while "under the influence" of alcohol or other intoxicants, regardless of the person's blood alcohol content. This second provision of AS 28.33.030 overlaps with the "under the influence" clause of AS 28.35.030 (the normal DUI statute). And this overlap engenders the statutory ambiguity that lies at the heart of this appellate litigation—because, on account of this overlap, former AS 28.33.140 might reasonably be construed to encompass DUI offenses that do not involve the operation of a commercial vehicle.

Given the legislative history, I suspect that the legislature did not intend to expand the scope of the statute in this fashion. But even if the legislature might have intended this result, the fact remains that the statute is irreconcilably ambiguous on this issue—because of the tension between subsection (a) and subsection (b) described above.

Because these two provisions of the statute can not be reconciled, it is impossible to say with any certainty whether the statute is limited to DUI offenses involving the operation of commercial vehicles or whether, on the other hand, it applies to all DUI offenses. This being so, the law requires us to resolve this ambiguity against the government.[4]

For these reasons, I agree with my colleagues that we must construe AS 28.33.140 as applying only to DUI offenses involving the operation of commercial vehicles. Accordingly, the district court should not have

taken action against Haywood's commercial driver's license.

---

4. *See Brookins v. State,* 600 P.2d 12, 17 (Alaska 1979); *Ned v. State,* 119 P.3d 438, 446–47 (Alaska App.2005); *Wells v. State,* 102 P.3d 972, 976 (Alaska App.2004); *Whitesides v. State,* 88 P.3d 147, 151 (Alaska App.2004); *State v. ABC Towing,* 954 P.2d 575, 579 (Alaska App.1998); *Magnuson v. State,* 843 P.2d 1251, 1253 (Alaska App. 1992).